******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CLAUDIA PUFF *v.* GREGORY PUFF
## (AC 37640)

DiPentima, C. J., and Beach and Bishop, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from certain postjudgment orders of the trial court modifying alimony and finding her in contempt. The plaintiff had filed a motion seeking an upward modification of alimony on the basis of, inter alia, a diagnosis of multiple sclerosis. At a subsequent hearing, counsel for the defendant orally presented an agreement between the parties. Pursuant to the agreement, the defendant was to pay $10,000 per month for 120 months in periodic alimony and the plaintiff could, in turn, choose to assign those payments to a special needs trust. The agreement indicated that the defendant was to be named a residual beneficiary to the trust and that the plaintiff was required to secure, or endeavor to secure, a legal opinion that such an arrangement would not affect the defendant's federal tax deductions. Finally, the agreement contained a nondisparagement clause and required the defendant to retract certain statements. The parties also indicated that, after consulting with experts on trust formation and taxation, they intended to submit a written document embodying the agreement to the court. The court then canvassed the parties, entered a finding that the terms presented were fair and equitable under the circumstances, and approved the oral agreement. The plaintiff subsequently filed a motion to open the court's order on the agreement, arguing that the trust contemplated by the parties would not qualify as a special needs trust under the law and that the defendant would not be able to deduct payments from his taxable income as alimony. Following certain subsequent disagreements between the parties, the court reviewed the transcript of the hearing and reduced the terms of the parties' previous oral agreement into a written decision. The defendant subsequently filed a motion for contempt asserting, inter alia, that the plaintiff had failed to obtain an opinion letter regarding the tax deductibility of the defendant's alimony payments as required by the agreement. In response, the plaintiff argued that she had tried but was unable to obtain such a letter because the defendant's status as a residual beneficiary likely jeopardized his right to deduct alimony payments. The trial court subsequently granted the motion for contempt, concluding that the plaintiff had wilfully violated its order. On the plaintiff's appeal to this court, *held*:

1. The trial court did not err in concluding that the parties' oral agreement was an enforceable, binding agreement and not merely an agreement to agree: the parties had expressed an intent to resolve the matter at the hearing and, notwithstanding the provision requiring consultation with experts, sought to have the court approve their oral agreement as an enforceable order; moreover, the parties had reached an agreement on the relevant material terms including the amount of alimony, the method of payment, the retraction of statements by the defendant, and the nondisparagement clause.

2. The plaintiff could not prevail on her claim that the trial court improperly modified the parties' oral agreement when reducing it to a written decision; the court's written decision did not modify or improperly rewrite the oral agreement between the parties, but simply memorialized the terms expressed at the hearing, and the court did not act improperly by not including in its written decision a term requiring the plaintiff to receive tax free alimony because such a term was not included in parties' original oral agreement.

3. The plaintiff could not prevail on her claim that the trial court did not adequately canvass her, as required by statute (§ 46b-66), at the hearing at which the parties presented the oral agreement and at the proceeding at which the court had reduced the oral agreement to a written order: the court's canvass following presentation of the oral agreement was sufficient to satisfy the requirements of § 46-66, which required the court to ensure that the terms were fair and equitable under the circumstances,

as the financial affidavits were set forth in the record, the transcript of the hearing was replete with references to the plaintiff's disability, the plaintiff's counsel had the opportunity to present additional information to the court, and the court's canvass revealed that the plaintiff had knowingly entered into the agreement; moreover, the court was not required by § 46-66 to conduct an additional canvass after issuing its written decision, which merely summarized the parties' previous oral agreement and did not alter its terms.

4. The trial court improperly granted the defendant's postjudgment motion for contempt; given that the plaintiff was required under the agreement to secure, or endeavor to secure, an opinion letter regarding the tax deductibility of the defendant's alimony payments, and given the undisputed fact that the plaintiff had made at least some effort to secure the opinion letter required under the agreement, this court was left with the definite and firm conviction that the trial court's finding of contempt was clearly erroneous.

Argued March 16—officially released October 10, 2017

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Grogins, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Emons, J.*, granted the plaintiff's motion for modification; subsequently, the court, *Emons, J.*, granted the plaintiff's motion to open; thereafter, the court, *Heller, J.*, issued certain orders in accordance with the parties' stipulation; subsequently, the court, *Heller, J.*, denied the plaintiff's motion to reargue, and the plaintiff appealed to this court; thereafter, the court, *Tindill, J.*, granted the defendant's motion for contempt, and the plaintiff filed an amended appeal. *Reversed in part; judgment directed.*

*Samuel V. Schoonmaker IV*, with whom, on the brief, was *Wendy Dunne DiChristina*, for the appellant (plaintiff).

*Edward M. Kweskin*, with whom were *Sarah Gleason* and, on the brief, *Zachary J. Phillipps* and *Leonard M. Braman*, for the appellee (defendant).

*Opinion*

BEACH, J. The plaintiff, Claudia Puff, appeals from the orders of the trial court entered in connection with various motions following the dissolution of her marriage to the defendant, Gregory Puff. The plaintiff claims that the court erred in (1) approving a stipulated agreement between the parties, (2) modifying the parties' agreement, (3) approving the parties' agreement without first conducting an adequate canvass pursuant to General Statutes § 46b-66, and (4) granting the defendant's motion for contempt. We agree with the plaintiff's fourth claim and disagree with her other claims. Accordingly, we affirm in part, and reverse in part, the judgment of the trial court.

The following facts, as they appear in the record, and procedural history are relevant. The parties were married in 1988. There were no children issue of the marriage. In September, 2002, the plaintiff commenced an action for dissolution of the marriage. On December 19, 2002, the court, *Grogins, J.*, rendered judgment dissolving the parties' marriage. The judgment of dissolution incorporated by reference a separation agreement, which provided that the defendant was to pay the plaintiff periodic alimony of $5900 per month, and an additional $5000 each August and December, for ten years, subject to earlier termination for reasons not relevant here.

In March, 2009, the plaintiff filed a motion for an upward modification of alimony as to amount and duration, on the bases of increases in the defendant's income and in her living expenses. In June, 2010, the plaintiff filed an amended motion for modification of alimony on the additional basis of her deteriorating health; she recently had received a diagnosis of multiple sclerosis. On February 28, 2012, the court, *Emons, J.*, granted the motion for modification, but ordered that the increase in duration and amount was nonmodifiable. The plaintiff filed a motion to open and set aside the February 28, 2012 decision. On April 9, 2013, the court, *Emons, J.*, granted the plaintiff's motion to open and vacated its February 28, 2012 decision for the purpose of hearing additional evidence.

On February 19, 2014, a hearing was held before Judge Heller. During that hearing, the defendant's attorney stated the terms of a stipulated agreement regarding the plaintiff's motion to modify and other motions. The plaintiff's attorney stated that the parties were relying on experts to create a special needs trust into which the defendant would pay alimony, but that "[there are] some terms that we are just unfamiliar with . . . so the concept will be put on the record, but the actual term of how that's [going to] take place is not [going to] be put on the record." He explained that the parties would "work on the details of the writing, and . . .

submit it at a later date." The defendant's attorney said, "This is . . . a postjudgment stipulation. It comes upon the plaintiff's motion for modification of alimony. And so the agreement is as follows . . . ." He proceeded to state the agreement, which contained twelve paragraphs, on the record.

The court then canvassed both parties. The plaintiff indicated that she had reviewed the terms of the agreement with her attorney, that she understood all of the provisions and that she believed the agreement to be fair and equitable. The court stated that it found the stipulated agreement to be fair and equitable and approved the agreement.

The defendant filed a motion on May 16, 2014, requesting the court to approve his proposed draft reducing, into writing, the terms of the oral stipulation presented at the February 19, 2014 hearing. The court, *Heller, J.*, held a hearing on the defendant's motion on June 17, 2014. The plaintiff objected on the ground that the stipulation presented at the February 19, 2014 hearing should be vacated because it was impossible to execute. The court stated that it would compare the draft of the agreement with the transcript of the February 19, 2014 proceedings, and it continued the matter to a later date.

On June 18, 2014, the plaintiff filed a motion to open and vacate the February 19, 2014 order. In that motion, the plaintiff argued that the trust contemplated in the February 19, 2014 oral stipulation could not qualify under the law as a special needs trust in the circumstances presented and that the defendant would not be able to deduct the $10,000 monthly payment required under the agreement from his gross income for the purpose of reducing his taxes.

The defendant's attorney presented a revised draft of the stipulation at a hearing before Judge Heller on August 18, 2014. The plaintiff's attorney argued that the revised draft stipulation was inconsistent with the February 19, 2014 oral stipulation, and that the terms of the February 19, 2014 oral stipulation could not be implemented according to trust and tax law. The court stated: "I think what the parties believed at the time [of the February 19, 2014 hearing] may not be what they believe today. But what I will do is enter an order and turn the stipulation into a written order of the court. . . . And then we'll proceed with [the plaintiff's motion to open and vacate the February 19, 2014 order]."

On November 17, 2014, the court, *Heller, J.*, reduced the February 19, 2014 oral stipulation to a written order entitled "memorandum of decision on postjudgment motions resolved by stipulation approved and so ordered on February 19, 2014." The document set forth the terms of the stipulated agreement stated on the record at the February 19, 2014 hearing. Several para-

graphs are especially germane to the issues on appeal. Paragraph one provided that the defendant was to pay to the plaintiff as periodic alimony $10,000 per month for 120 months and that the plaintiff had the right to assign the alimony to a special needs trust, subject to the defendant's ability to deduct the alimony from his gross income under the Internal Revenue Code. Paragraph six provided that the defendant was to be a residual beneficiary of the special needs trust in the same proportion as the sum of the alimony payments made or assigned to the special needs trust was to the total contributions to the special needs trust from all sources. Paragraph eight provided that the plaintiff was to prepare a list of the defendant's statements that she deemed "hurtful or nasty," that the defendant was to retract those statements, that those retractions would not be deemed admissions, and that neither party was to disparage the other personally or professionally. Paragraph nine provided that the plaintiff "shall immediately secure, or endeavor to secure, a legal opinion to the effect that any action taken by the plaintiff to assign the alimony payments to the special needs trust does not affect the deductibility of such payments by the defendant under the tax laws of the United States." Paragraph ten gave the defendant the ability to recoup certain amounts from the special needs trust in the event that he was unable to deduct the alimony payments from his gross income. Paragraph eleven provided that the parties' February 19, 2014 oral stipulation was to supersede all prior orders in the case.

The court's recitation of the agreement was made available to the parties at a hearing on November 18, 2014, in connection with the plaintiff's motion to open and vacate the February 19, 2014 order. At the hearing the court stated the following: "I thought it would be helpful to the parties to have a written opinion of the court that tracked all of the orders that were put on the record on February [19, 2014]." The court said that "there was a binding agreement that was approved and ordered by the court on February [19, 2014]. It was not contingent. There were provisions that needed to be addressed relating to the terms of the special needs trust. But the parties had put the terms of their agreement on the record, and that agreement was approved and so ordered by the court." At the hearing, the plaintiff said that, on further consideration, her motion to open was "superfluous" and that she would not proceed with it. In her view, there had been no meeting of the minds on February 19, 2014, sufficient to form a settlement agreement on which a stipulation could be based. The plaintiff asserted that there was, then, no valid postjudgment order and, thus, nothing to open. The court disagreed with the plaintiff. This appeal followed.

On December 22, 2014, the defendant filed a motion seeking sanctions and a finding of contempt. On March

23, 2015, the court held a hearing on the defendant's motion. On March 27, 2015, the court, *Tindill, J.*, granted the defendant's motion. The plaintiff then filed an amended appeal.[1]

I

The plaintiff claims that on February 19, 2014, the court misapplied § 46b-66[2] when it approved the parties' stipulated agreement as an order of the court. The plaintiff claims that the stipulation did not create an enforceable agreement, but only an "agreement to agree." We are not persuaded.

We begin by setting forth the following general principles. "A stipulated judgment constitutes a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . . A stipulated judgment allows the parties to avoid litigation by entering into an agreement that will settle their differences once the court renders judgment on the basis of the agreement. . . . A stipulated judgment, although obtained through mutual consent of the parties, is binding to the same degree as a judgment obtained through litigation. . . ." (Internal quotation marks omitted.) *Housing Authority* v. *Goodwin*, 108 Conn. App. 500, 506–507, 949 A.2d 494 (2008).

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . [U]nless the trial court applied the wrong standard of law, its decision is accorded great deference because the trial court is in an advantageous position to assess the personal factors so significant in domestic relations cases . . . ." (Citation omitted; internal quotation marks omitted.) *Mundell* v. *Mundell*, 110 Conn. App. 466, 472, 955 A.2d 99 (2008).

"The rules governing contract formation are well settled. To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. . . . If the minds of the parties have not truly met, no enforceable contract exists. . . . [A]n agreement must be definite and certain as to its terms and requirements. . . . So long as any essential matters are left open for further consideration, the contract is not complete. . . . A contract requires a clear and definite promise." (Citation omitted; internal quotation marks omitted.) *Geary* v. *Wentworth Labs., Inc.*, 60 Conn. App. 622, 627,

760 A.2d 969 (2000); see also id., 628 (duration, salary, fringe benefits and other conditions of employment deemed essential to employment contract). "An agreement to agree to a material term at a later time is no agreement at all." (Internal quotation marks omitted.) *Kominski* v. *O'Keefe*, Superior Court, judicial district of Danbury, Docket No. FA-05-4001578-S (January 10, 2007) (42 Conn. L. Rptr. 650, 652); see *Geary* v. *Wentworth Laboratories, Inc.*, supra, 627 ("[a] contract requires a clear and definite promise").

The following additional facts are relevant. At the February 19, 2014 hearing, prior to stating the terms of the agreement on the record, the parties expressed their understandings as to the nature and effect of the agreement. The agreement was somewhat complex, as the defendant lived in Hong Kong and the plaintiff desired a special needs trust. The defendant's attorney noted the following: "[S]ubject to the court's permission, we'd like to put on . . . an oral stipulation. We've negotiated at some length, and . . . I think that we would like to make sure that the points are in the record today. And if the court sees fit to approve it, then at least we'll have an order." The plaintiff's attorney responded: "And then it's going to require some doing . . . in terms of drafting because the agreement contemplates the creation of a special needs trust . . . and the right to receive alimony into that trust. And the mechanics and logistics of that are being handled by people who are experts in those particular fields. . . . [W]hat we intend to do is encompass what we put on the record today within a written document that we're [going to] submit. But we want to make sure . . . that this matter [is] resolved. [The defendant] doesn't live in the area. He's going to be released and he's [going to] go back home. And we will work on the details of the writing, and we'll submit it at a later date." The defendant's attorney clarified: "But the understanding will be . . . that the writing will be consistent with what we're saying here today. And in the event that there were a dispute, that would be decided by a judge, consistent with the points raised today . . . without the necessity of the parties being here because it would just be a matter of working out the wording." The plaintiff's attorney agreed.

The court inquired as follows: "And this agreement, the stipulation that you want to put on the record is resolving all of the issues subject to there being a writing? Is that the intent?" The defendant's attorney responded: "Well, actually it's not [subject to a writing]. The writing will be the embodiment of . . . what we're saying today. . . . *So this would be the order, and an enforceable order today*. . . . [J]ust as a judgment file, for example, confirms the terms of the judgment. . . . If we had a dispute . . . we'd say here were the terms . . . that everybody stipulated to . . . . [If] for some reason we were unable to work out the wording, the

court would help us through that then." The plaintiff's attorney agreed and added the following: "However, with that . . . being said, there're some . . . terms that we are just unfamiliar with . . . for example the specific logistics of how the alimony is [going to] get assigned into the special needs trust. So the concept will be put on the record, but the actual terms of how that's [going to] take place is not [going to] be put on the record." The defendant's attorney further explained: "That's correct. But the further understanding . . . is that [the writing] . . . would still have to be consistent with what [we] are speaking about today." (Emphasis added).

The defendant's attorney then stated the terms of the agreement. He prefaced the recitation by saying that "this is a postjudgment stipulation. It comes upon plaintiff's motion for modification of alimony. And so the agreement is as follows, Your Honor."

Regarding paragraph nine, the defendant's attorney stated the following: "The plaintiff immediately shall secure or endeavor to secure a legal opinion that the deductibility by the defendant of the alimony is not impacted by any action taken by the plaintiff to assign the alimony to the trust." The plaintiff's attorney stated that "the linchpin of this whole deal is that [the defendant] wants the income tax deduction on the $10,000 a month . . . and that [the plaintiff] wants to actually receive the $10,000 a month. . . . So it's really, really important to each of these people to have the tax treatment that we believe, and that we both have been advised, exists." The defendant's attorney continued by stating that "paragraph nine also continues that in order to accomplish the deductibility, it may be a matter of assigning the right to receive the alimony, or simply . . . directing the payments be made to the trust or some mechanism that the parties, though counsel, will work in good faith to achieve with the result that the defendant shall have the right under the Internal Revenue [Code] to deduct the alimony on his income taxes, and income taxes are paid in accordance with [federal tax] law." The plaintiff's attorney again stated the following: "[T]he linchpin of the whole deal is that [the defendant] gets to deduct the payments that he's making pursuant to paragraph one, and that [the plaintiff gets] to actually receive [those] payments . . . ."

Following the parties' recitation of the agreement on the record,[3] the court stated the following: "[W]e'll note that this disposes of all open issues, and the only thing that is left to do is to have the parties prepare your agreement that's going to track . . . the agreement that you've put on the record." The court then canvassed the parties. Both reported that they understood the agreement, had reviewed it completely with their attorney, and thought the agreement was fair and equitable. Following the canvass, the court stated: "So we

will put on the record that I find the [parties'] oral stipulation that was put on the record today to be fair and equitable. And it will be approved and so ordered." The parties agreed that the "order is today," though a written version was to be submitted.

At the November 18, 2014 hearing, when the enforceability of the February 19, 2014 stipulation was being considered, the court found that "there was a binding agreement that was approved and ordered by the court on February [19, 2014]. It was not contingent. There were provisions that needed to be addressed relating to the terms of the special needs trust. But the parties had put the terms of their agreement on the record, and that agreement was approved and so ordered by the court."

The plaintiff argues that in order for an agreement to be enforceable pursuant to § 46b-66, there must be a contract between the parties and that the court erred in applying that statute because no contract existed. She contends that the February 19, 2014 oral agreement was an "agreement to agree" rather than an enforceable contract. She argues that the "extremely complex oral understanding" placed on the record "was replete with tentativeness and ambivalence" and that the purpose of the February 19, 2014 hearing was only to place a concept on the record. She argues that, because essential terms of the proposed agreement—that the alimony payments would be tax deductible for the defendant and the plaintiff would receive the alimony payments tax free—were unresolved and required expert opinions, there was no meeting of the minds and, accordingly, no valid contract. She further argues that there were additional "unresolved and important terms," including the future retraction by the defendant of certain remarks and the defendant's ability to recoup contributions to the special needs trust. The plaintiff argues as well that, on February 19, 2014, the parties had not yet drafted the written agreement and had not obtained legal and tax opinions on essential contract terms and, therefore, there was no meeting of the minds and no enforceable contract.

The defendant argues that the February 19, 2014 oral stipulation was an enforceable agreement. He contends that this oral agreement was not "a mere placeholder pending fulfillment of conditions precedent" and that if the plaintiff had such subjective intent, that intent was not expressed to the court on February 19, 2014. The defendant argues that the parties and the court stated that the order was binding and final. Furthermore, he argues that the parties were free to enter into a contract that contained a term requiring the parties to refer to a professional's opinion regarding the technical provisions of the special needs trust without creating a condition precedent or a contingency. We agree with the defendant.

No intent contrary to the creation of an enforceable order was expressed at the February 19, 2014 hearing, and the court's finding of such was not clearly erroneous. Both parties expressed the intent to resolve the matter on February 19, 2014, and sought to have the court approve the agreement as an enforceable order. The plaintiff's attorney agreed with the defendant's attorney that the contemplated written document would simply embody the agreement stated on the record, and that they considered the agreement to be "an enforceable order today."

The provisions concerning the special needs trust, were, according to both parties, the "linchpin[s]" of the agreement. Although the plaintiff's attorney noted that the parties needed to consult with experts to draft the special needs trust and that the concept of the trust was being placed on the record, neither the plaintiff nor her attorney expressed any desire not to create an immediately enforceable order; indeed, they expressed the contrary intent.

Although the intent as expressed may be useful, the critical question is whether the essential terms were actually agreed upon. The plaintiff argues on appeal that one term essential to her was that the plaintiff would receive $10,000 per month that would not be subject to taxation, and this term, as matters developed, was not agreed upon. No such term, however, was expressly stated on the record at the February 19, 2014 hearing. Describing paragraph one of the agreement, the defendant's attorney stated that "the defendant shall pay to the plaintiff the sum of $10,000 per month for a term of 120 months, *as taxable alimony*, tax deductible to the defendant." (Emphasis added.) The plaintiff's attorney agreed, stating the importance of the defendant's being able to deduct the amount of $10,000 and the plaintiff "actually receiv[ing] the $10,000 a month." Receiving $10,000 a month is different from receiving it tax free; there is nothing in the February 19, 2014 record expressing a term that the plaintiff would not pay taxes on the amount received.[4] The essential term of the defendant's alimony payments was objectively agreed upon at the hearing: the plaintiff would receive $10,000 in presumptively taxable alimony.

The plaintiff further argues that the "agreement" left unclear how much maintenance she would receive net of taxes, in light of the recoupment provisions in paragraph ten. As previously noted in this opinion, paragraph ten allowed the defendant to deduct certain amounts from future alimony payments, should he not be allowed to deduct his alimony payments. There was indeed uncertainty, but the parties expressly agreed to a very specific method of adjusting payments in the event of a contingency. The plaintiff's attorney expressed an identical understanding of paragraph ten. He stated, in response to the placement of paragraph

ten on the record, that: "what [the defendant's attorney] has said is accurate with just a clarification: we are talking about [United States] law only, okay [United States] tax law only. This is an international situation."

The plaintiff further argues that there were other material unresolved terms, such as the requirement that the defendant retract "hurtful and nasty things that were said," the plaintiff's eligibility for Medicaid and other state and federal assistance programs, and the terms of the nondisparagement clauses. The agreement provided in paragraph eight that the plaintiff was to provide a list of comments that she deemed hurtful by March 15, 2014, and that the defendant was to issue retractions. This term was not unresolved; rather, the parties were simply required to perform at a later date. Additionally, at the February 19, 2014 hearing, the plaintiff's attorney expressed his understanding that "the intention of all of this is . . . to try to make sure that [the plaintiff] qualifies under both the income and the assets thresholds for the services available to people with her types of disabilities." The discussion of state and federal assistance programs was not a missing or unresolved material term, but rather expressed the plaintiff's motivation for entering into the agreement—namely, trying to integrate substantial payments by the defendant while remaining qualified for public assistance. Paragraph eight included a nondisparagement clause, whereby neither party would disparage the other personally or professionally. The plaintiff's attorney further clarified this provision at the February 19, 2014 hearing, stating that the parties "can't circumvent the nondisparagement [provision] by getting someone else to do it for [them]." The nondisparagement term was stated clearly on the record, thus, and was not unresolved.

The plaintiff additionally argues that the complex scheme was unworkable and therefore there was no contract. The formation of a binding contract requires a mutual understanding of the terms that are definite and certain between the parties. See *Geary* v. *Wentworth Labs.*, *Inc.*, supra, 60 Conn. App. 627–28. The material terms, including the amount of alimony and method of payment, were agreed upon. If one or more subordinate aspirations later proved unworkable, this event would not negate the existence of a present agreement on the essential terms. For the foregoing reasons, we conclude that the court did not err in concluding that the parties' agreement was enforceable and not merely an agreement to agree.

II

The plaintiff claims, in the alternative, that even if the February 19, 2014 agreement was enforceable, the court improperly modified that agreement when it promulgated its November 17, 2014 decision, substituting that document for the transcript of the previous oral agreement of the parties. She contends that the

November 17, 2014 decision included the defendant's "linchpin" term, that he would be able to deduct the amount of alimony payments, but eliminated the plaintiff's "linchpin" term, which was that she would actually receive $10,000 per month tax free. She also argues that the court eliminated from its November 17, 2014 decision certain statements made at the February 19, 2014 hearing to the effect that the agreement was a "concept," that creating the trust documents was "going to require some doing," that there were "some terms that we are just unfamiliar with," and that the written "agreement is really [going to] be the controlling thing," that paragraph six of the written agreement would be "augmented by provisions of paragraph eight, ten and eleven," and that the parties should return to court with the "full agreement with the terms of the trust . . . ." We do not agree.

In the court's November 17, 2014 "memorandum of decision on postjudgment motions resolved by stipulation approved and so ordered on February 19, 2014," it explained that at the February 19, 2014 hearing, the parties entered an oral stipulation on the record resolving all outstanding postjudgment motions. The court stated that the plaintiff's counsel had explained at the hearing that the parties "were putting the concept of the special needs trust—but not its actual terms—on the record at that time, because the trust instrument had to be prepared by an attorney who was an expert in the law of special needs trusts. In particular, the special needs trust counsel would have to address the mechanics of paying or assigning alimony to a special needs trust so that the plaintiff would qualify for Medicaid and other services and programs available to individuals with disabilities while receiving the benefit of the alimony paid by the defendant, and the defendant would receive a federal income tax deduction for the alimony that he paid." (Footnote omitted.) The court then stated that defendant's attorney had recited the specific terms of the agreement, and listed them in twelve numbered paragraphs. The court concluded by stating that, after canvassing both parties, it had approved the oral stipulation, entered it as an order, and that it had directed the parties to prepare and execute a written agreement that included the relevant terms.

The equitable powers of a trial court in a dissolution action do not include the power to rewrite an agreement made by the parties. See *Eckert* v. *Eckert*, 285 Conn. 687, 696, 941 A.2d 301 (2008). In this case, however, the court's written recitation set forth in its November 17, 2014 decision did not modify or improperly rewrite the terms of the February 19, 2014 oral agreement. The November 17, 2014 decision memorialized the February 19, 2014 oral agreement. At a hearing on November 18, 2014, the court gave counsel a copy of the November 17, 2014 decision and stated, "I prepared a memorandum of decision that put, in the context of a memorandum,

the stipulation and the orders that were entered on February 19. . . . I thought that it would be helpful to the parties to have a written opinion of the court that tracked all of the orders that were put on the record on February [19, 2014]. So that's what this is." The court further explained that "the [November 17, 2014] decision embodies, basically restates, the oral stipulation and those terms that were put on the record, just not in the course of a colloquy among counsel, the parties, and the court. So there's nothing new in [the November 17, 2014] decision. The stipulation was entered on February [19, 2014]."

The plaintiff claims that the court modified several provisions of the February 19, 2014 agreement in its November 17, 2014 decision. The court simply memorialized the previously expressed terms of the February 19, 2014 agreement on the record. Cf. *Sisk* v. *Meagher*, 82 Conn. 376, 377, 73 A. 785 (1909) (preparation of judgment file constitutes clerical action). For example, the court did not act improperly by not including a term that the plaintiff was to receive the $10,000 per month tax free, as the plaintiff claims, because, as stated in part I of this opinion, the February 19, 2014 agreement did not include such a term. The court did not unfairly eliminate the plaintiff's statements regarding certain terms being placed on the record as "concepts."[5] The court specifically stated that the plaintiff's attorney had "explained that they were putting the *concept* of the special needs trust—but not its actual terms—on the record." (Emphasis added).

We have examined the transcript of the February 19, 2014 proceedings and the court's November 17, 2014 decision and find the remainder of the plaintiff's claims regarding the court's summary of the agreement to be without merit.

### III

The plaintiff next claims that the court's canvasses of the plaintiff regarding (a) the February 19, 2014 agreement and (b) the November 17, 2014 order did not satisfy the requirements of § 46b-66. We do not agree.

Section 46b-66 (a) provides in relevant part: "In any case under this chapter where the parties have submitted to the court an agreement concerning . . . alimony . . . the court shall inquire into the financial resources and actual needs of the spouses . . . in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. . . ." According to § 46b-66, "a court has an affirmative obligation, in divorce proceedings, to determine whether a settlement agreement is fair and equitable under all the circumstances. . . . The presiding judge has the obligation to conduct a searching inquiry to make sure that the settlement agreement is substantively fair and has been knowingly negotiated. . . . With such judicial supervi-

sion, private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine." (Citations omitted; internal quotation marks omitted.) *Baker* v. *Baker*, 187 Conn. 315, 321–22, 445 A.2d 912 (1982).

A

The plaintiff claims that the court did not conduct an adequate inquiry pursuant to § 46b-66 before approving the agreement on February 19, 2014. She claims that the court (1) did not have the entire file before it and, therefore, was unable to review the underlying motions and the February 28, 2012 memorandum of decision, which included a finding that the plaintiff had been severely impacted by her diagnosis of multiple sclerosis, (2) failed to inquire into the plaintiff's health or the medications she was taking on the day of the canvass, (3) did not inquire into the actual needs of the parties or their respective financial resources, and (4) failed explicitly to find that the plaintiff knowingly negotiated the complicated oral agreement. We do not agree.

The court's inquiry was sufficient to satisfy the requirements of § 46b-66. Section 46b-66 requires an inquiry into the parties' financial circumstances and the actual needs of the parties. The court had before it the financial affidavits of both parties. The plaintiff's argument that the court was not aware of the plaintiff's medical condition is not supported by the record. The plaintiff's attorney stated at the February 19, 2014 hearing that a special needs trust was contemplated in order to ensure that the plaintiff would qualify for federal and state assistance programs for individuals with disabilities. The finding of the court, *Emons, J.*, in its February 28, 2012 memorandum of decision that the plaintiff had a diagnosis of multiple sclerosis was in the court file and there was no indication that this information was missing from the court file when the court determined that the agreement was fair and equitable.[6] See *Brash* v. *Brash*, 20 Conn. App. 609, 612, 569 A.2d 44 (1990) (judge presumed to have performed duties correctly in absence of evidence to contrary). More critically, the transcript is replete with references to her disability; indeed, her disability was the impetus for the complicated stipulated agreement. If the plaintiff's attorney wanted the court to know more details about the plaintiff's condition or medication, he could have placed that information on the record. See *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 175–76, 646 A.2d 195 (1994) ("lawyers who represent clients in matrimonial dissolutions have a special responsibility for full and fair disclosure, for a searching dialogue, about all of the facts that materially affect the client's rights and interests" [internal quotation marks omitted]).

The court's obligation pursuant to § 46b-66 is to ensure that the agreement is fair and equitable, after

becoming familiar with the circumstances; there is no explicit requirement in that section that the court find that a party has knowingly entered into the agreement, though that will likely be the case. Here, the court's canvass of the plaintiff nonetheless revealed that she knowingly entered into the agreement. During her canvass, the plaintiff indicated that she had heard the defendant's attorney recite the terms of the agreement, that she understood what the defendant's attorney was describing, that she had an opportunity thoroughly to review the terms of the agreement completely with her attorney and that she believed the agreement was fair and equitable under the circumstances. The court did not err by declining to conduct a more exhaustive canvass.

### B

The plaintiff argues alternatively that, even if the court's November 17, 2014 decision did not improperly rewrite the February 19, 2014 agreement, the November 17, 2014 decision was nonetheless improper because the court failed to conduct a contemporaneous inquiry pursuant to § 46b-66. We are not persuaded.

On February 19, 2014, the parties presented the agreement to the court, the court conducted an inquiry pursuant to § 46b-66 and the court found the agreement to be fair and equitable. The court's November 17, 2014 decision did not alter the February 19, 2014 agreement, but rather summarized it. See part I of this opinion. The court was not required pursuant to § 46b-66 to conduct an additional inquiry before memorializing the oral agreement.

### IV

The plaintiff finally claims that the court, *Tindill, J.*, erred in granting the defendant's postjudgment motion for contempt.[7] We agree.

"[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding. . . .

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [party] were in contempt of a court order. . . . We review the court's factual findings in

the context of a motion for contempt to determine whether they are clearly erroneous. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses." (Citation omitted; internal quotation marks omitted.) *Mekrut* v. *Suits*, 147 Conn. App. 794, 799, 84 A.3d 466 (2014).

The following additional facts are relevant. On December 22, 2014, the defendant filed a motion for contempt and sanctions. In this motion, he argued that paragraph nine of the February 19, 2014 agreement required the plaintiff to " 'secure or endeavor to secure' " a legal opinion that the tax deductibility of the defendant's alimony payments was not affected by an assignment of the alimony payments to the trust. He argued that the plaintiff wilfully violated that order by failing to produce any legal opinion regarding the tax deductibility and failing to draft the special needs trust, but instead "placed every obstacle she could in the way of reducing to writing the oral stipulation," including the filing of a motion to open that she later withdrew.

At the February 19, 2014 hearing, the defendant's attorney stated, when discussing paragraph nine, that "in order to sign off on paragraph ten, which is coming up, [the plaintiff] in and—I don't even think it's abundance of caution, just . . . in prudent practice, is going to get an opinion letter from a special needs and a tax person, who will opine that yes, [the defendant's] deducibility is not impacted at all by the scheme that we contemplate." The court then asked the plaintiff's attorney the following: "And you expect you're going to get that letter?" The plaintiff's attorney responded by stating that "[w]e expect we're [going to] get that [letter]." In the November 17, 2014 decision memorializing the February 19, 2014 agreement, the court stated under paragraph nine that "[t]he plaintiff shall immediately secure, or endeavor to secure, a legal opinion to the effect that any action taken by the plaintiff to assign the alimony payments to the special needs trust does not affect the deductibility of such alimony payments by the defendant under the tax laws of the United States."

At the November 18, 2014 hearing, the issue of whether the plaintiff obtained the opinion letter was discussed and the plaintiff's attorney stated that "it was done in good faith and . . . the letter was obtained," and she explained that "[the plaintiff] did not get a letter that said it would be . . . deductible." The plaintiff's attorney had, in fact, attached a draft opinion letter to her June 18, 2014 motion to open.

A hearing was held on the defendant's motion for contempt on March 23, 2015. At the hearing, the plaintiff's attorney argued that the plaintiff did not wilfully violate the February 19, 2014 order because it was impossible to comply with paragraph nine of the agreement, stating that the inclusion of the defendant as a residual beneficiary was a complication which likely jeopardized his ability to deduct his payments. The plaintiff's attorney stated that on March 6, 2014, the plaintiff's former attorney stated in a letter to the defendant's attorney that the preliminary research of his tax attorney suggested this difficulty with deductibility. The defendant's attorney stated that the opinion to which the plaintiff referred was a draft letter from an accountant for discussion purposes only. The court inquired whether there was a final opinion. The plaintiff's attorney stated that no further research was conducted, as the plaintiff's former attorney had filed a motion to withdraw in the interim. The defendant's attorney stated that he had a witness available who was prepared to say that the scheme was viable. In its written order granting the defendant's motion for contempt, the court found "by clear and convincing evidence that a court order was entered on February 19, 2014, that the plaintiff violated that court order, and that the plaintiff's violation of the order was wilful." The court awarded the defendant attorney's fees and fees for expert witnesses in the amount of $169,225.61.

The plaintiff argues on appeal that the February 19, 2014 and November 17, 2014 court orders were interlocutory in nature and were ambiguous as to whether the plaintiff would be in violation of the order if she was unable to obtain the requisite legal opinion. The plaintiff further argues that the failure to follow the order was not wilful.

The November 17, 2014 decision memorializing the February 19, 2014 order provided that the plaintiff was to "secure or endeavor to secure" an opinion letter. It is undisputed that the plaintiff made some effort to secure such a letter. Relying on the draft opinion letter, she contends that it was impossible to obtain a correct opinion that the defendant's tax deductibility was not jeopardized by his putative status as residual beneficiary. The defendant counters that not only was it possible to obtain such a letter, but that he had obtained such an opinion. In light of the undisputed fact that the plaintiff made at least some effort to secure the opinion letter, we are left with a definite and firm conviction that the court's finding of contempt was clearly erroneous.

The judgment is reversed only as to the finding of contempt and the case is remanded with direction to deny the defendant's motion for contempt; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The defendant argues that the portion of the plaintiff's appeal challenging

the merits of the February 19, 2014 order should be dismissed. The defendant filed two motions in this court seeking to dismiss the appeal, in which he raised the same grounds as he now does on appeal. This court denied both motions.

[2] General Statutes § 46b-66 (a) provides in relevant part: "In any case under this chapter where the parties have submitted to the court an agreement concerning . . . alimony . . . the court shall inquire into the financial resources and actual needs of the spouses . . . in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. . . ."

[3] The parties recited and discussed, on the record, each of the twelve paragraphs in the stipulated agreement.

[4] The agreement *did* contain, in paragraph ten, a mechanism by which the defendant's payments could be modified if, because of the intricacies of the arrangement, his payments were determined not to be deductible *by him*. In that event, he could reduce his alimony payments by the amounts of the disallowed deductions. The plaintiff's expression that she needed to "actually receive" $10,000 per month is, then, consistent with the ability of the *defendant* to deduct the amount of alimony he paid.

[5] To the extent that the plaintiff argues the court erred in modifying the February 19, 2014 "agreement to agree" into a contract with clear and definite terms, that argument fails because the February 19, 2014 agreement was, in fact, an enforceable agreement. See part I of this opinion.

[6] Following the court's canvass of the parties, the court indicated that it would "grab the file and the financial affidavits." The courtroom clerk indicated that the file was with Judge Emons, but then stated "Oh, no, it's not. I take it back." The court stated that it only had "part of the file here." There was no indication from the record that the court was not aware of the portions of the record relevant to this issue.

[7] The plaintiff also claims that the court's award of attorney's fees to the defendant on his motion for contempt was unreasonable. Because we determine that the court erred in granting the defendant's motion for contempt, we need not address this claim.

————————————————