******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CLAUDIA PUFF *v.* GREGORY PUFF
## (SC 20058)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to the Appellate Court from certain postjudgment orders of the trial court modifying alimony, finding her in contempt for her wilful violation of a court order, and awarding, inter alia, attorney's fees to the defendant. After the trial court granted the plaintiff's motion for modification of alimony, increased the amount of monthly alimony and extended the duration of those payments, the plaintiff moved to open and vacate the judgment on the ground that the defendant had failed to disclose a pending employment offer at considerably higher compensation. The trial court granted the motion and opened the judgment for the purpose of hearing new evidence. Thereafter, the parties and their counsel appeared before the court, requesting to place on the record an oral stipulation regarding alimony payments and other terms that they had negotiated. The stipulation required the defendant to increase his alimony payments, with a provision that the plaintiff could assign those payments to a special needs trust, under which the defendant was to be a residuary beneficiary. The stipulation obligated the plaintiff to draft the special needs trust and to secure or endeavor to secure a legal opinion that the trust arrangement would not affect the defendant's right to deduct the alimony payments from his federal tax obligations. Following the trial court's canvass of the parties, the court approved and ordered the stipulation, and, subsequently, the defendant moved for an order, asking the court to approve a written embodiment of the oral stipulation prepared by his counsel, to which the plaintiff objected. The plaintiff claimed, among other things, that the parties were unaware when they drafted the stipulation that it was impossible to create a legally valid special needs trust or to afford the defendant a tax deduction for the alimony according to the terms of the stipulation and, therefore, that the defendant's motion for order should be denied and the stipulation should be vacated. The plaintiff then filed a motion to open and vacate the court's order approving the stipulation, to which the defendant objected. In support of her motion, the plaintiff asserted that she had received an opinion from an accountant who had determined that the defendant's alimony payments would not be deductible under the terms of the stipulation. Following several hearings, the court presented the parties with its memorandum of decision on the postjudgment motions resolved by stipulation, which reduced the oral stipulation to writing. The plaintiff objected on the ground that the decision did not reflect her counsel's statement that, if the parties were unable to obtain an opinion that confirmed that the alimony payments were deductible and that the plaintiff would receive those payments as contemplated, the plaintiff would not agree to the stipulation. The trial court responded that a binding agreement had been approved and ordered and that it was not contingent in nature. The plaintiff declined to withdraw her motion to open, and the court declined to deny it because there had not yet been a hearing on the merits but stated that the motion was procedurally defective. The defendant then filed a motion for sanctions and for contempt, claiming that, after settling years of litigation by stipulating to the modification, the plaintiff failed to meet her obligations under that stipulation and contested her own settlement through improper procedural mechanisms. In connection with his request for sanctions, the defendant sought an award of attorney's fees and expert fees incurred for defense against the plaintiff's motions, and he asked that the court find the plaintiff in contempt for her wilful failure to create the special needs trust and to seek the legal opinion required by the order approving the stipulation, as well as for intentionally not acting in good faith to implement that order. He requested that the order of contempt include an award of expenses he had incurred

in defending against the plaintiff's motion to open and in employing an expert to draft the special needs trust that the plaintiff had failed to produce. The trial court thereafter granted the defendant's motion for contempt and for sanctions, finding by clear and convincing evidence that the plaintiff had wilfully violated the trial court's order approving the stipulation. The court awarded the defendant attorney's fees and expert fees in an amount corresponding to all litigation expenses incurred by the defendant after the date on which the trial court entered the order approving the stipulation. On appeal to the Appellate Court, that court upheld the trial court's decision on the postjudgment motions resolved by stipulation but reversed its decision with respect to the contempt order, concluding that, in light of the undisputed fact that the plaintiff made at least some effort to obtain the legal opinion she was required to secure or endeavor to secure, it was left with a definite and firm conviction that the trial court's finding of contempt was clearly erroneous. In light of that conclusion, the Appellate Court did not address the reasonableness of the award of attorney's fees and expert fees. From the Appellate Court's judgment, the defendant, on the granting of certification, appealed, claiming that the plaintiff did not comply with the legal opinion requirement but that, in any event, the trial court's award was based on a broader course of conduct than the failure to secure the legal opinion. After oral argument, and in response to a request from this court, the trial court issued an articulation, stating, inter alia, that its order was based both on the plaintiff's wilful contempt of its order approving the stipulation and on the plaintiff's subsequent litigation misconduct, which caused undue delay and expense to the defendant. As the basis for its finding of wilful contempt, the trial court noted, inter alia, that the plaintiff violated three provisions in the parties' stipulation, the first prohibiting the parties from disparaging each other, the second requiring the plaintiff to obtain the legal opinion, and the third limiting the parties' disclosure or publication of the settlement. The court cited, as an additional basis for its finding of wilful contempt, the parties' representation at the hearing on the order approving the stipulation that the parties would work together to reduce the stipulation to writing and that, in the event of a dispute, the parties would seek the court's involvement. *Held*:

1. The trial court's order of contempt must be reversed, as none of the bases on which the court relied for that order supported it, and, accordingly, this court upheld the Appellate Court's reversal of the contempt order: with respect to the plaintiff's purported violation of the nondisparagement and nonpublication provisions of the stipulation, the defendant did not advance either ground in his motion for contempt or at the hearing on that motion, the articulation did not identify any particular statement that violated either provision, and to allow the order of contempt to rest on either basis would contravene the plaintiff's due process rights; moreover, the trial court's reliance in its articulation on the undisputed fact that there was no letter from an accountant in the court file or submitted into evidence as proof of the plaintiff's wilful violation of the stipulation's provision requiring the plaintiff to secure or endeavor to secure a legal opinion was problematic, as there was a draft written opinion by an accountant appended to one of the plaintiff's motions, the court's requirement that the plaintiff prove the existence of the letter misallocated the burden of proof because the defendant had the burden, as the party moving for the contempt order, to prove by clear and convincing evidence that the plaintiff wilfully violated this provision, and the defendant offered no testimony regarding the availability of, or the plaintiff's failure to undertake good faith efforts to obtain, the legal opinion; furthermore, the court's finding of contempt on the basis of the parties' representation that they would work together to reduce the oral stipulation to writing was also problematic, as the defendant did not seek a contempt order on this ground, thereby raising due process concerns, the defendant did not offer any evidence to prove contempt on this basis and therefore could not meet his burden of proof, and the pleadings did not support the trial court's conclusion, as the defendant's motion for order did not allege that the defendant's counsel made any effort to work with the plaintiff or her counsel to memorialize the stipulation before the defendant filed his motion for contempt, and, insofar as the stipulation obligated the parties to bring disputes over its wording to the trial court's attention, the record clearly revealed that the plaintiff did so.

2. Insofar as the trial court's award of attorney's fees and expert fees was based on litigation misconduct, it lacked the requisite findings, and, accordingly, this court remanded the case for further proceedings on the defendant's motion for sanctions; although attorney's fees generally are not awarded to the successful party in the absence of a contractual or statutory exception, a court has inherent authority to award attorney's fees when the losing party has acted in bad faith, but the trial court in the present case failed to make the findings necessary to support its award for litigation misconduct, that is, that the plaintiff acted in bad faith and did not advance any colorable claims.

Argued February 19, 2019—officially released January 14, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Grogins, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Emons, J.*, granted the plaintiff's motion for modification of alimony; subsequently, the court, *Emons, J.*, granted the plaintiff's motion to open; thereafter, the court, *Heller, J.*, issued certain orders in accordance with the parties' stipulation; subsequently, the court, *Heller, J.*, denied the plaintiff's motion to reargue or reconsider, and the plaintiff appealed to the Appellate Court; thereafter, the court, *Tindill, J.*, granted the defendant's motion for sanctions and for contempt, and the plaintiff filed an amended appeal with the Appellate Court, *DiPentima, C. J.*, and *Beach* and *Bishop, Js.*, which reversed the trial court's judgment only as to the finding of contempt and remanded the case with direction to deny the motion for contempt, and the defendant, on the granting of certification, appealed to this court. *Affirmed in part*; *reversed in part*; *further proceedings*.

*Edward M. Kweskin*, with whom, on the brief, was *Sarah Gleason*, for the appellant (defendant).

*Samuel V. Schoonmaker IV*, with whom, on the brief, was *Wendy Dunne DiChristina*, for the appellee (plaintiff).

*Opinion*

McDONALD, J. This postdissolution matter stems from the parties' oral stipulation following a motion for modification of alimony, the trial court's adoption of that stipulation as a court order, and subsequent litigation efforts by the defendant, Gregory Puff, on one hand, to carry the order into effect, and by the plaintiff, Claudia Puff, on the other hand, to challenge the order. At issue is the trial court's decision granting the defendant's motion for sanctions and for contempt and awarding him more than $169,000 in attorney's fees and expert fees, i.e., all the litigation expenses he had incurred following the entry of the order adopting the stipulation. In his certified appeal, the defendant challenges the Appellate Court's judgment reversing the judgment of contempt. See *Puff* v. *Puff*, 177 Conn. App. 103, 129, 171 A.3d 1076 (2017). He contends that the award was based on a broader course of conduct than the one part of the order considered by the Appellate Court and that the trial court's award was proper. On the basis of the trial court's articulation ordered by this court, we conclude that, insofar as the award is based on contempt, it cannot stand on any of the grounds articulated by the trial court. Insofar as the award is based on litigation misconduct, it lacks the requisite findings. We therefore affirm the Appellate Court's judgment but direct that court to remand the case to the trial court for further proceedings on the defendant's motion for sanctions for litigation misconduct.

I

The record reveals the following facts, either found by the trial court or otherwise undisputed. The parties' fourteen year marriage was dissolved in 2002. The judgment of dissolution incorporated a separation agreement, under which the defendant was obligated to pay periodic alimony of $5900 per month for a period of ten years, plus biannual payments totaling an additional $10,000 for that same period.[1] In 2009, three years before those obligations were to terminate, the plaintiff filed a motion seeking to modify the alimony related orders. The grounds alleged for the modification were an increase in the defendant's income and the plaintiff's deteriorating health due to a recent diagnosis of a serious medical issue. The trial court, *Emons*, *J.*, granted the motion, increasing the monthly alimony to $6100 and extending the duration of those payments to February, 2016, with both the amount and the duration not subject to further modification. Weeks after that decision was issued, the plaintiff filed a motion to open and vacate the judgment on the ground that the defendant had not disclosed to the court an imminent offer of employment at considerably higher compensation, which became final days after the modification was ordered. The court granted the motion in April, 2013, opening the judgment for the purpose of hearing new

evidence.[2]

## A

### Entry of an Oral Stipulation as a Court Order

In February, 2014, the parties and their counsel appeared before the court, requesting to put an oral stipulation on the record that they had negotiated. The defendant was represented by Edward M. Kweskin, and the plaintiff was represented by Norman Roberts. Kweskin made prefatory remarks about the agreement before stating the particulars on the record. He stated that it was the parties' intention to have the court enter the stipulation as an order if the court were to approve it. He explained that this process was intended to confirm the terms on which the parties had agreed before the defendant returned to his foreign residence. Kweskin stated that the parties' intention was to distill the agreement into writing, after experts had been consulted on certain mechanics of the agreement still to be determined, and to have any disputes about the writing brought to the court for resolution consistent with the oral stipulation. He made clear, however, that the parties intended for the stipulation to be an enforceable order that was not conditioned on the execution of the written agreement.

Kweskin then recited the twelve paragraphs that comprised the stipulation, while Roberts weighed in with any clarifications that he thought necessary. The principal substantive terms of the stipulation were as follows. The defendant was required to pay, along with certain other obligations, $10,000 per month for a period of ten years, as alimony taxable to the plaintiff and tax deductible by the defendant. The plaintiff had the right to assign those payments to a special needs trust.[3] The defendant would be made a residual beneficiary of the trust, in the same proportion to the payments that he had made to the trust. In order for the defendant to be secure in his right to a tax deduction under present law or in the event of changes to the law, should any tax deduction be disallowed, he had the right to recoup from the trust the value of that deduction and any penalties assessed if sufficient offsets could not be made from pending payment obligations to the plaintiff.

The defendant also was obligated to make a specific contribution toward the attorney's fees of a designated special needs trust attorney. His counsel had the right to review the terms of the trust before it was executed by the plaintiff to ensure that the trust conformed to the terms of the oral stipulation.

The stipulation obligated the plaintiff to "immediately . . . secure or endeavor to secure a legal opinion that the deductibility by the defendant of the alimony is not impacted by any action taken by the plaintiff to assign the alimony to the trust." Counsel acknowledged that the mechanics of transferring the alimony by means

that would ensure the deduction had not yet been determined, but the stipulation further provided that, "in order to accomplish the deductibility . . . the parties, through counsel, will work in good faith to achieve [that method], with the result that the defendant shall have the right [under federal tax law] to deduct the alimony . . . ."

Roberts informed the court that he had been told that the tax deduction would not be a problem and that they were in the process of getting an opinion letter. Roberts explained that "the linchpin of this whole deal is that [the defendant] wants the income tax deduction on the $10,000 a month . . . and that [the plaintiff] wants to actually receive the $10,000 a month. You can imagine that the delta between those two things, given what the financial affidavits look like, is somewhere in the neighborhood of 40, 45 percent. So it's really, really important to each of these people to have the tax treatment that we believe, and have both been advised, exists. *In order* [*to*] *sign off on paragraph 10* [allowing the defendant to recoup disallowed deductions and penalties], [the plaintiff], in an, I don't even think it's abundance of caution, just some, in prudent practice, is going to get an opinion letter from a special needs and a tax person, who will opine that, yes, [the defendant's] deductibility is not impacted at all by the scheme that we contemplate." (Emphasis added.) Just before Kweskin put the recoupment, or safety net, provision on the record, Roberts stated that this provision "is the reason that we are going to need the opinion letter *before this can be done.*" (Emphasis added.)

After the stipulation was read into the record, the court canvassed the parties. It inquired whether their counsel had discussed the terms of the stipulation with them, whether they understood the terms, and whether they agreed that the terms were fair and equitable. The parties gave affirmative responses to each question. The plaintiff asked only one question, obtaining confirmation that she would be receiving $10,000 per month for ten years. The court then approved and ordered the stipulation. The court suggested that the parties "probably should have the full agreement with the terms of the trust . . . also so ordered by the court."

B

The Defendant's Motion for Order and the
Plaintiff's Objection Thereto

In April, 2014, approximately two months after this order was entered, Roberts sought permission to withdraw as the plaintiff's counsel, which the court granted the following month. In May, 2014, the defendant filed a motion for order, asking the court to approve a written embodiment of the oral stipulation prepared by his counsel, a copy of which had been provided to the plaintiff on that date. The day before a June hearing

on the motion, the plaintiff, through new counsel, Amy J. Greenberg, filed an objection. Although the objection addressed the defendant's proposed draft, asserting that it contained certain additions or omissions that rendered it nonconforming to the oral stipulation, its principal thrust was numerous arguments as to why the stipulation itself was not binding or could not be enforced. The plaintiff claimed that, unbeknownst to the parties when they drafted the stipulation, it was impossible either to create a legally valid special needs trust or to afford the defendant a tax deduction for the alimony under the terms of the stipulation.[4] She further contended that the stipulation was too ambiguous and contained too many unknowns to result in an enforceable agreement, that these uncertainties precluded the parties' knowing consent, that the terms were unconscionable,[5] and that the canvass of the plaintiff had been insufficient. The plaintiff asserted that the defendant's motion for order should be denied and that the stipulation should be vacated.

The trial court held a hearing on the defendant's motion for order in June, 2014. Greenberg argued, among other things, that viability of the stipulation was dependent on the availability of the tax deduction and that, after the oral stipulation was made, Roberts had obtained an expert opinion from an accountant that the alimony would not be deductible under the oral stipulation's terms. In response to Kweskin's claim that he had never seen this opinion, Greenberg countered that Kweskin had been made aware of it, claiming that Roberts' records reflected communications between counsel regarding the opinion and whether the defendant would be willing to forgo the residuary benefit to save the tax deduction. The court declined to address this matter, concluding that it was probably necessary to address the issues before the court in two steps, first determining whether the defendant's written stipulation accurately reflected the oral stipulation and then considering arguments as to why the agreement could not be carried out. The court acknowledged that the plaintiff's objection had included arguments as to discrepancies between the oral stipulation and the defendant's written stipulation and indicated that those concerns would be considered. The court scheduled another hearing on the matter for a later date.

C

### The Plaintiff's Motion To Open and Vacate the February, 2014 Order

The day after the June hearing, the plaintiff filed a motion to open and vacate the February, 2014 order approving the oral stipulation. The grounds for the motion mirrored those enumerated in her objection to the defendant's motion for order, including mutual mistake and impossibility. One difference was that the motion to open acknowledged the parties' expectation

that they would receive an "opinion from a tax expert" that the defendant's ability to deduct the payments would not be impacted by the scheme that they contemplated, and asserted that such expert—identified as certified public accountant Ryan C. Sheppard—had determined that the payments would not be deductible under the stipulation's terms.

The defendant objected to the motion to open and vacate on procedural and substantive grounds. He claimed that the motion was defective because it was not accompanied by a memorandum of law in violation of the rules of practice.[6] He also claimed that the plaintiff's "scattershot challenge" sought to undo a carefully reviewed agreement to which she had consented in an effort to renegotiate terms more favorable to her. He further asserted that, if, as the plaintiff contended, the agreement contains a provision benefitting him that jeopardized creation of a valid special needs trust; see footnote 4 of this opinion; it was within the defendant's power to waive that provision in order to eliminate any infirmity.

The parties appeared again before the court for an August, 2014 hearing. The defendant submitted to the court a revised draft memorializing the oral stipulation, aimed at addressing the plaintiff's earlier objections. The plaintiff argued that the court should not sign off on the draft because the terms are unenforceable under the law for the reasons set forth in her objection and motion to open, and because the draft did not incorporate the terms of the special needs trust. She further argued that the defendant's draft did not include a critical term—Roberts' statement that the plaintiff would not sign off on the agreement if the expert's opinion did not confirm the expectations of the parties. Because these expectations could not be fulfilled, there was no agreement, according to the plaintiff. In response, the court stated: "I think [that] what the parties believed at the time may not be what they believe today." The court explained that it first would turn the stipulation into a written order and then would deal with any purported problems in carrying out that order. The plaintiff reiterated concerns about two matters omitted from the defendant's draft, which the court agreed to consider.

Another hearing was scheduled for November, 2014. Shortly before that hearing, each of the parties disclosed a special needs tax attorney as an expert witness who would offer an opinion in support of their respective views as to whether a legally valid trust, rendering the alimony payments tax deductible to the defendant, could be created under the terms of the oral stipulation. The plaintiff filed a motion in limine seeking to preclude the defendant's expert from offering such an opinion predicated on adding or deleting terms to the oral stipulation. At this time, the plaintiff also filed a memorandum of law in support of her motion to open, which

the defendant objected to on the grounds that it was untimely and a "sham" that merely mirrored her motion. See footnote 6 of this opinion.

At the November, 2014 hearing, both parties had their expert witnesses present. At the commencement of the hearing, the court, apparently unexpectedly, presented the parties with a "Memorandum of Decision on Post-judgment Motions Resolved by Stipulation Approved and So Ordered on February 19, 2014," which distilled the oral stipulation into writing.[7] The court announced that the decision was intended to resolve the defendant's motion for order. The plaintiff objected that the decision did not reflect Roberts' uncontested statement setting forth a "condition precedent," namely, that, if they were unable to obtain an opinion confirming the linchpin of the agreement—that the defendant would get the deduction and the plaintiff would get the contemplated payments—the plaintiff would not "sign off" on the stipulation. In response to these arguments, the court stated its view that a binding agreement had been approved and ordered in February, 2014, and that it was not contingent in nature.

After the plaintiff further argued that the parties' erroneous belief that these conditions could be fulfilled gave rise to a mutual mistake of law, the court sought clarification of the plaintiff's position. The court questioned whether the plaintiff was claiming that there was a condition precedent to the existence of an agreement or, alternatively, that a term of the contract could not be performed. The court explained that, if the former, the plaintiff's argument would mean that the February, 2014 order never was effective because the condition precedent would never occur. Only if the plaintiff's claim was the latter would she move to open an approved order on the ground that the agreement cannot be performed. The court acknowledged that the plaintiff could argue in the alternative.

Greenberg explained that she had filed the earlier motion to open without having reviewed all of the facts and the record, filing it as a "protective mechanism" because she had inherited the case near the four month deadline for filing a motion to open. She characterized the motion as unnecessary and "superfluous." Greenberg stated that the plaintiff's position was that there was no final judgment triggering the four month period to move to open because no notice of judgment had been sent out after the oral stipulation was ordered and because the stipulation was too indefinite and left too many things open to render it final.

Before ascertaining whether the plaintiff was withdrawing the motion to open, the court inquired whether any of the terms of the agreement had been carried out. Kweskin represented that the defendant had been making the $10,000 monthly alimony payment and had provided funds to his counsel to hold in escrow for

some of the other payments due. When the court stated to Greenberg that the defendant's alimony payments suggested that he believed that there was a final order, Greenberg characterized the payments as "gratuitous."[8]

Greenberg declined to withdraw the motion to open and, instead, attempted to recast it as a motion to vacate the oral stipulation rather than to open and vacate the February, 2014 order. The defendant challenged the recast motion as procedurally improper. The court declined to deny the motion to open because there had not yet been a hearing on the merits and it was unclear what direction the plaintiff was taking. The court none-theless stated that the motion was procedurally defective for various unspecified reasons and advised that the plaintiff could not reclaim it.

The plaintiff requested that, because the parties' experts were present, the court hear their testimony regarding whether the alimony was tax deductible and whether a valid special needs trust could be formed under the terms of the stipulation. The court rejected the request in the absence of a proper pending motion.

In bringing the hearing to a close, the court stated that it interpreted the plaintiff's position to be that noth-ing that was legally binding occurred on February 19, 2014, that the plaintiff does not need to do anything, and that the defendant is paying $10,000 a month gratu-itously. The court then stated: "It does seem the ball is probably in your court, Attorney Greenberg. Unless [the defendant] and his counsel decide that they want to take steps to enforce the stipulation—then, of course, Attorney Kweskin would file the appropriate motion, presumably for contempt. But, I think that's where we are." Greenberg responded: "I don't think there was anything that my client probably even had to do at this point."

D

The Plaintiff's Motion To Reargue or Reconsider the Decision Adopting the Oral Stipulation

The plaintiff thereafter filed a motion to reargue or reconsider the court's November, 2014 order memorial-izing the oral stipulation. She asked the court to vacate both that decision and the oral stipulation, thereby reinstating the case to its position prior to the stipula-tion. The plaintiff contended that she had been denied a due process hearing on all of the issues that she had raised in her objection to the defendant's motion for order. The defendant objected to the motion principally on the ground that it reiterated arguments from the motion to open that the plaintiff had been given the opportunity but declined to pursue. The court denied the motion to reargue or reconsider.

E

Motion for Sanctions and for Contempt

Concurrently with his objection to the plaintiff's motion to reargue, the defendant filed a motion for sanctions and for contempt. Broadly stated, the factual premise of the defendant's motion was that, after settling five years of litigation by stipulating to a modification, the plaintiff failed to meet her obligations under that stipulation and instead contested her own settlement through improper procedural mechanisms. In the request for sanctions, the defendant sought an award of attorney's fees and expert fees incurred for defense against (1) the plaintiff's motion to open and vacate, which was not accompanied by the memorandum of law required by the rules of practice and thereby shifted the burden of legal research to the defendant, and which the plaintiff ultimately did not pursue in the form presented to the court, and (2) the plaintiff's motion to reargue or reconsider, on the ground that the motion raised the same claims as the motion to open, despite the court's instruction that the plaintiff could not reclaim the latter motion after she had "withdrawn" it.

The defendant further asked the court to find the plaintiff in contempt for (1) her wilful failure to seek the legal opinion required by the order, i.e., an opinion from a lawyer, (2) her wilful failure to cause the special needs trust to be drafted, and (3) intentionally not acting in good faith to implement the order. The defendant requested that the order of contempt include an award of legal fees for expenses incurred in defending against the motion to open and costs incurred in having a special needs trust expert draft the trust that the plaintiff had failed to produce.

At the hearing on the motion for sanctions and for contempt, neither party presented testimony. The only documentary evidence submitted, other than the parties' financial affidavits, was an affidavit from Kweskin "in support of the defendant's request that the court order that . . . the plaintiff pay all or a significant portion of the defendant's legal fees and costs as part of the sanctions against the plaintiff for the proliferation of unnecessary, inconsistent, and oppressive litigation which unfairly has driven up the [defendant's] litigation expenses incurred since the parties stipulated to a post-judgment alimony modification order on February 19, 2014 . . . ."

With a limited exception that we will discuss later, the hearing was largely a colloquy between the parties' counsel and the trial court, *Tindill, J.* In comments to the parties, the court emphasized that the parties had been canvassed as to their understanding of, and agreement to, the oral stipulation. The court took issue with inconsistencies in the plaintiff's legal positions, characterizing the plaintiff's position as: "It was an order, it wasn't, it was contingent, it wasn't." The court pointed to the fact that the plaintiff had accepted the $10,000 monthly alimony payments while at the same time

arguing that the court order wasn't valid, and stated: "She doesn't get to pick and choose, counsel. You cannot have it all kinds of ways. It doesn't work that way." The court also pointed to the plaintiff's failure to go forward on her motion to open, which would have provided evidence from both sides' experts regarding the crux of the plaintiff's position.

After the court renewed concerns about the plaintiff's litigation efforts that took the position that the agreement was unenforceable, Greenberg argued that the plaintiff had "a good faith basis for raising all of the issues that she did. And saying it was . . . too many contingencies in that February 19th stipulation to make it a final, viable, definitive order. And that's what you need for contempt. You need something that's . . . a good faith belief, which I think she had, that this was not a final order, and was not something that she had to follow. And she did come through with an . . . opinion from an attorney, Lisa Davis."[9]

The only discussion that addressed the defendant's specific grounds for contempt related to the plaintiff's obligation to obtain a "legal opinion" that the tax deduction was available under the terms of the agreement. In discussing the impossibility argument, Greenberg mentioned that the plaintiff had sought an opinion letter from a tax person that revealed that the special needs trust would have been illegal under the terms of the order. The court inquired where the letter was, and Greenberg replied that she did not have it with her but would attempt to find it on her computer. The court then asserted that, even if it assumed that the letter existed, "[t]he problem with the whole thing is that [the plaintiff] agreed to what was made a court order and then she decided [that] she didn't like the agreement." Greenberg attempted to rebut this view by bringing to the court's attention an e-mail exchange between counsel in which Roberts informed Kweskin that research suggested that the deductibility of the alimony would be put in jeopardy if the defendant were a residuary beneficiary and inquired whether it would be a problem for the defendant not to be a residuary beneficiary of the trust. Kweskin questioned whether it was proper for Greenberg to read this e-mail to the court, to which the court replied: "Probably not." Nonetheless, Greenberg continued, noting that Kweskin indicated that the defendant would not agree to relinquish residuary benefits.

Kweskin's response on this subject was that the plaintiff was required to obtain a legal opinion from a lawyer, not an accountant. He pointed out that the letter that Greenberg referred to was "a draft letter for discussion purposes only from an accountant." Presumably in response to Greenberg's impossibility argument, Kweskin argued that the defendant had brought a special needs trust attorney to the hearing on the plaintiff's

motion to open and vacate who came prepared to offer an opinion that the defendant's payments to the trust would be tax deductible.

After these exchanges, the court posed questions directly to the parties, who had been sworn in at the court's direction at the outset of the hearing. The only questions directed to the plaintiff related to her income, expenses, and needs. The questions directed to the defendant addressed whether he had made any of the payments required under the order (yes); whether he had done so because he believed that he was obligated to do so (yes); and whether the special needs trust drafted by his expert afforded him the tax deduction for the alimony ("it did") and the residual benefits ("I think it did"; "[y]es"). At the close of the hearing, the court informed the parties that it would take judicial notice of the "entire file" to decide the motion.

The court thereafter issued an order, stating in relevant part: "The court, having reviewed relevant portions of the court file, considered the parties' respective financial affidavits, testimony of the parties, argument of counsel, and the criteria set forth in [General Statutes] § 46b-82, hereby grants the defendant's postjudgment motion for sanctions and for contempt. The court finds by clear and convincing evidence that a court order was entered on February 19, 2014, that the plaintiff violated that court order, and that the plaintiff's violation of the order was wilful.

"The defendant is awarded attorney's [fees] and expert fees, postjudgment, in the amount of $169,225.61 . . . ." This award corresponded to the amount Kweskin provided to the court at the hearing for all litigation expenses the defendant incurred after the date on which the oral stipulation was entered as an order.

After the plaintiff appealed from the judgment of contempt to the Appellate Court, the defendant filed a motion for an articulation. He asserted that the court's order could be construed as making the award based on contempt, on litigation misconduct, or on both, and asked the court to clarify this matter. The trial court denied the request, and the defendant did not seek review of that decision.

### F

### Appellate Proceedings

Before the Appellate Court, the plaintiff challenged (1) the decision on postjudgment motions resolved by stipulation, both as to whether the underlying stipulation was enforceable and as to whether it was proper to issue that decision, and (2) the order of contempt, both as to the merits and the reasonableness of the award. See *Puff* v. *Puff*, supra, 177 Conn. App. 103. The Appellate Court affirmed the judgment with respect to the decision on postjudgment motions and reversed the judgment with respect to the contempt order. See id.,

105–106. In reversing the order of contempt, the Appellate Court apparently assumed that the only basis for the award was the purportedly wilful violation of the plaintiff's obligation to "secure or endeavor to secure a legal opinion that the deductibility by the defendant of the alimony is not impacted by any action taken by the plaintiff to assign the alimony to the trust." (Internal quotation marks omitted.) Id., 114. In rejecting that basis, it reasoned: "It is undisputed that the plaintiff made some effort to secure such a letter. Relying on the draft opinion letter [from a certified public accountant], she contends that it was impossible to obtain a correct opinion that the defendant's tax deductibility was not jeopardized by his putative status as residual beneficiary. The defendant counters that not only was it possible to obtain such a letter, but that he had obtained such an opinion. In light of the undisputed fact that the plaintiff made at least some effort to secure the opinion letter, we are left with a definite and firm conviction that the court's finding of contempt was clearly erroneous." Id., 128–29. In light of its reversal on the merits, the Appellate Court did not address the reasonableness of the award.

This court denied the plaintiff's petition for certification to appeal from the Appellate Court's judgment insofar as it upheld the trial court's decision on postjudgment motions; see *Puff* v. *Puff*, 327 Conn. 994, 175 A.3d 1245 (2018); but granted the defendant's petition to appeal from that judgment insofar as it reversed the contempt order. See *Puff* v. *Puff*, 327 Conn. 994, 175 A.3d 1245 (2018). In his certified appeal, the defendant contends that the plaintiff did not comply with the legal opinion requirement but that, in any event, the trial court's award was based on a broader course of conduct beyond the failure to obtain that opinion.

After oral argument, this court issued an order to the trial court, *Tindill, J.*, directing it to provide this court with an articulation as to five matters: (1) whether the court's order granting the defendant's motion for sanctions and for contempt was based solely on contempt or also on litigation misconduct; (2) which part(s) of the February 19, 2014 order provided the basis for the finding of contempt; (3) what facts supported the finding of contempt for each such part; (4) what competent evidence those factual findings rested on; and (5) the basis for the $169,225.61 award. See Practice Book § 61-10 (b) (permitting reviewing court to order articulation); see also Practice Book § 60-2 (permitting reviewing court to order judge to take any action necessary to complete record for proper presentation of appeal).[10]

In response, the trial court issued an articulation stating that its order was based both on the plaintiff's wilful contempt of the February, 2014 court order and her subsequent litigation misconduct, which caused undue delay and expense to the defendant. The trial court

identified the parts of the February, 2014 order that were the bases for the court's finding of wilful contempt: (1) paragraph 8, which prohibits either party from disparaging the other personally or professionally; (2) paragraph 9, which requires the plaintiff to endeavor to secure a legal opinion; and (3) paragraph 11, which limits the parties' disclosure or publication of the settlement. An additional basis for the contempt, as explained by the trial court, was "the representation on February 19, 2014, that the parties would subsequently work together to reduce the agreement to writing consistent with the agreement read into the record. In the event of a dispute over the wording requiring the court's involvement, the parties asked that the court resolve the dispute consistent with the expressed oral agreement." The articulation set forth seven facts,[11] without assigning them as support for any particular violation of the order or designating them as applicable to contempt or litigation misconduct and cited generically to the following evidence in support of its factual findings: the parties' "testimony" and their financial affidavits filed at the contempt hearing; various transcripts or recordings of hearings; and thirty-two pleadings filed by the plaintiff between March, 2009, when she filed her motion for modification, and February, 2014, when the court adopted the stipulation as an order of the court. The basis of the court's award of litigation costs was not explained in relation to either contempt or litigation misconduct but as resting on "representations of counsel," the defendant's testimony at the hearing on the motion for sanctions and for contempt, and the affidavit of fees submitted by Kweskin.

We are compelled to conclude that the trial court's judgment of contempt must be reversed, although our decision is necessarily based on different and broader grounds than the one adopted by the Appellate Court in reaching the same conclusion. We further conclude that the sanction for litigation misconduct must be reversed.

## II

The following principles are material to our review of the contempt order. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense." (Internal quotation marks omitted.) *In re Leah S.*, 284 Conn. 685, 692, 935 A.2d 1021 (2007); see also *Blaydes* v. *Blaydes*, 187 Conn. 464, 467, 446 A.2d 825 (1982) ("[c]ourts have inherent power to coerce compliance with their orders through appropriate sanctions for contemptuous disobedience of them"). The present case involves allegations of indirect civil contempt. "A refusal to comply with an injunctive decree is an indirect contempt of court because it occurs outside the presence of the trial court." (Internal quotation marks omitted.) *Brody* v. *Brody*, 315 Conn. 300, 317, 105 A.3d 887 (2015).

"[C]ivil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts." (Emphasis omitted; internal quotation marks omitted.) *Gabriel* v. *Gabriel*, 324 Conn. 324, 333, 152 A.3d 1230 (2016); see also *Powell-Ferri* v. *Ferri*, 326 Conn. 457, 468, 165 A.3d 1124 (2017) (civil contempt may be founded only on clear and unambiguous court order). In part because the contempt remedy is "particularly harsh"; *Blaydes* v. *Blaydes*, supra, 187 Conn. 467; "such punishment should not rest upon implication or conjecture, [and] the language [of the court order] declaring . . . rights should be clear, or imposing burdens [should be] specific and unequivocal, so that the parties may not be misled thereby." (Internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 382, 107 A.3d 920 (2015).

To constitute contempt, it is not enough that a party has merely violated a court order; the violation must be wilful. See, e.g., *Eldridge* v. *Eldridge*, 244 Conn. 523, 529, 710 A.2d 757 (1998); *Connolly* v. *Connolly*, 191 Conn. 468, 483, 464 A.2d 837 (1983). "The inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt. *Mallory* v. *Mallory*, 207 Conn. 48, 57, 539 A.2d 995 (1988)." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, supra, 532.

It is the burden of the party seeking an order of contempt to prove, by clear and convincing evidence, both a clear and unambiguous directive to the alleged contemnor and the alleged contemnor's wilful noncompliance with that directive. See, e.g., *Norberg-Hurlburt* v. *Hurlburt*, 162 Conn. App. 661, 671, 133 A.3d 482 (2016); *Marshall* v. *Marshall,* 151 Conn. App. 638, 651, 97 A.3d 1 (2014); *Statewide Grievance Committee* v. *Zadora*, 62 Conn. App. 828, 832, 772 A.2d 681 (2001); see also *Latino Officers Assn. City of New York, Inc.* v. *New York*, 558 F.3d 159, 164 (2d Cir. 2009). If the moving party establishes this twofold prima facie case, the burden of production shifts to the alleged contemnor to provide evidence in support of the defense of an inability to comply with the court order. See, e.g., *Afkari-Ahmadi* v. *Fotovat-Ahmadi*, 294 Conn. 384, 397, 985 A.2d 319 (2009); *Eldridge* v. *Eldridge*, supra, 244 Conn. 532; *Leslie* v. *Leslie*, 174 Conn. 399, 403, 389 A.2d 747 (1978); see also *Gascho* v. *Global Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017), cert. denied, U.S. , 138 S. Ct. 2576, 201 L. Ed. 2d 294 (2018); *Combs* v. *Ryan's Coal Co.*, 785 F.2d 970, 984 (11th Cir.), cert. denied sub nom. *Simmons* v. *Combs*, 479 U.S. 853, 107 S. Ct. 187, 93 L. Ed. 2d 120 (1986).

The question of whether the underlying order is clear and unambiguous is a legal inquiry subject to de novo review. See, e.g., *In re Leah S.*, supra, 284 Conn. 693. If we answer that question affirmatively, we then review

the trial court's determination that the violation was wilful under the abuse of discretion standard. See id., 693–94.

In conducting this review, we must be mindful of due process concerns that arise in cases of indirect contempt, i.e., where the court has not personally observed the contempt. In the absence of an admission of contempt, indirect contempt must be proven by clear and convincing evidence. See *Brody* v. *Brody*, supra, 315 Conn. 318–19; see also *Edmond* v. *Foisey*, 111 Conn. App. 760, 771, 961 A.2d 441 (2008) ("A finding of indirect civil contempt must be established by [clear and convincing evidence] that is premised on competent evidence presented to the trial court and based on sworn testimony. . . . A trial-like hearing should be held if issues of fact are disputed." [Emphasis omitted; internal quotation marks omitted.]). "A judgment of contempt cannot be based on representations of counsel in a motion, but must be supported by evidence produced in court at a proper proceeding." (Internal quotation marks omitted.) *Kelly* v. *Kelly*, 54 Conn. App. 50, 60, 732 A.2d 808 (1999); accord *Edmond* v. *Foisey*, supra, 772; see also *Baker* v. *Baker*, 95 Conn. App. 826, 832–33, 898 A.2d 253 (2006).

In applying these standards to the record in the present case, we are compelled to conclude that the order of contempt must be reversed. Insofar as the articulation cites paragraphs 8 and 11 of the oral stipulation, respectively setting forth nondisparagement and nonpublication obligations, as bases for contempt, the defendant did not advance either ground in his motion. The record does not indicate that either ground was belatedly advanced at the hearing on the motion. Nor does the articulation identify any particular statement that violates either provision. It is evident that to allow the order of contempt to rest on either basis would contravene the plaintiff's due process rights. "[D]ue process of law . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." (Internal quotation marks omitted.) *Brody* v. *Brody*, supra, 315 Conn. 317.

The articulation also relies on paragraph 9 of the oral stipulation, which obligated the plaintiff to "secure, or endeavor to secure, a legal opinion that deductibility by the defendant is not impacted by any action taken by the plaintiff to assign the alimony to the trust."[12] The articulation recites as proof of the plaintiff's wilful violation of this provision the "undisputed" fact that there was no letter from a certified public accountant in the court file or such a letter submitted into evidence. There are two problems with this reasoning. First, the

accountant's draft written opinion was in the court file; a copy is appended to the plaintiff's motion to reargue and reconsider the court's November, 2014 memorandum of decision memorializing the parties' oral stipulation.[13] Second, and more fundamental, the court misallocates the burden of proof to the plaintiff. It was the defendant's burden, as the moving party, to prove by clear and convincing evidence that the plaintiff had wilfully violated this obligation. An allegation contained in the defendant's motion for contempt does not suffice. See *Kelly* v. *Kelly*, supra, 54 Conn. App. 60. The defendant offered no testimony regarding the availability of the written opinion despite the plaintiff's claim of responsibility, or the plaintiff's failure to undertake good faith efforts to obtain the opinion letter. The only documentary evidence he submitted relevant to contempt, his counsel's affidavit in support of the request for attorney's fees, did not address this obligation.

Even if the trial court could have viewed statements by Greenberg asserting that the plaintiff had obtained the accountant's opinion to meet her legal opinion obligation as a judicial admission that relieved the defendant of his burden of production; see *Kanopka* v. *Kanopka*, 113 Conn. 30, 39, 154 A. 144 (1931) (noting that judicial admission, which "may be made by a party as well as by his counsel," does away with need for evidence to prove fact admitted); see also *Brye* v. *State*, 147 Conn. App. 173, 178, 81 A.3d 1198 (2013) ("Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings. . . . They excuse the other party from the necessity of presenting evidence on the fact admitted and are conclusive on the party making them." [Internal quotation marks omitted.]); the judicial admission would not suffice as proof of the fact admitted.[14]

The last basis on which the court's articulation rested its finding of contempt was the parties' representation to the court that they would subsequently work together to reduce the agreement to writing consistent with the oral stipulation put on the record and that, in the event of a dispute over the wording, they would ask the court to resolve the dispute consistent with the expressed oral agreement. There are at least three problems with a finding of contempt on this basis. First, this too was not a ground on which the defendant sought an order of contempt, raising the same due process concerns previously cited.[15] Second, presumably because this ground was not included as part of his contempt motion or related pleadings, the defendant did not offer any evidence to prove contempt on this basis, and, therefore, he could not meet his burden of proof. Third, the pleadings do not support the conclusion that the trial court reached. The defendant's motion for order does not allege that his counsel made any effort to work with the plaintiff or her counsel to memorialize the stipulation prior to filing that motion. The motion indi-

cates that the defendant's draft was provided to the plaintiff for the first time on the same day that the defendant filed the motion. Insofar as the stipulation obligated the parties to bring disputes over wording to the court's attention, the record clearly reveals that the plaintiff did so. The court's finding of contempt on this basis also cannot stand.

None of the bases relied on by the trial court for its order of contempt supports that order. Although there were two other bases advanced in the defendant's motion that the court did not cite in its articulation, we must infer that the trial court rejected them. See footnote 2 of this opinion (applying similar inference to court's failure to address plaintiff's unclean hands defense). Therefore, the order granting the defendant's motion for contempt must be reversed.

III

This leaves the ground of litigation misconduct as a purported basis for the court's $169,225.61 award of attorney's fees and expert fees. The trial court's order, even as supplemented by the articulation, is fatally flawed.

An exception to the common-law rule that attorney's fees are not allowed to the successful party in the absence of a contractual or statutory exception "is the inherent authority of a trial court to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. . . . [A] litigant seeking an award of attorney's fees for the bad faith conduct of the opposing party faces a high hurdle. . . . To ensure . . . that fear of an award of [attorney's] fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the [bad faith] exception absent *both clear evidence* that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes . . . *and a high degree of specificity in the factual findings* of [the] lower courts. . . . Whether a claim is colorable, for purposes of the [bad faith] exception, is a matter of whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts had been established. . . . To determine whether the [bad faith] exception applies, the court must assess whether there has been substantive bad faith as exhibited by, for example, a party's use of oppressive tactics or its wilful violations of court orders; [t]he appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation. . . .

"[Our case law] makes clear that in order to impose sanctions pursuant to its inherent authority, *the trial court must find both that the litigant's claims were entirely without color and that the litigant acted in bad*

*faith.*" (Citations omitted; emphasis altered; internal quotation marks omitted.) *Berzins* v. *Berzins*, 306 Conn. 651, 661–63, 51 A.3d 941 (2012); see *Maris* v. *McGrath*, 269 Conn. 834, 846–47, 850 A.2d 133 (2004); *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 394, 685 A.2d 1108 (1996), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999); see also *Lederle* v. *Spivey*, 332 Conn. 837, 848 n.8, 213 A.3d 481 (2019) (concluding that, although subordinate findings must have high degree of specificity, trial court need not separately indicate which factual findings relate to which prong, colorability or bad faith, because subordinate factual findings that support bad faith could also support lack of colorability).

In the present case, even after the court was afforded an opportunity to articulate the basis of its award, it not only failed to support its decision with a high degree of specificity, it failed to make the two critical findings necessary to support its award for litigation misconduct—that the plaintiff acted in bad faith and failed to advance any colorable claims.[16] Perhaps the trial court operated under the misimpression that no such findings are required when litigation misconduct arises in connection with contempt. Such an approach, however, clearly would be in tension with our case law not only as to litigation misconduct, but also as to contempt, which directs parties to resort to the courts rather than to self-help to obtain relief from court-ordered obligations. See, e.g., *Sablosky* v. *Sablosky*, 258 Conn. 713, 720, 722, 784 A.2d 890 (2001); see also *In re Leah S.*, supra, 284 Conn. 700 (court's contempt case law enforces "important public policy against resorting to self-help tactics"). The defendant did allege facts in support of such findings. In other cases in which the trial court has failed to make the essential findings due to the application of an incorrect legal standard, we have reversed and remanded for further proceedings. See, e.g., *Berzins* v. *Berzins*, supra, 306 Conn. 663 (reversing and remanding for further proceedings when trial court had failed to make finding of bad faith). Cf. *Rinfret* v. *Porter*, 173 Conn. App. 498, 510, 513–16, 164 A.3d 812 (2017) (when trial court made twenty-eight factual findings but did not state "which of those facts supported its finding of 'entirely without color' and which supported its finding of 'bad faith conduct,'" reviewing court considered various theories under which facts could support both litigation misconduct prongs).

We conclude that it is appropriate to remand this case for further proceedings on the defendant's motion for sanctions and that such proceedings should be conducted by a new judge. At that time, the court is free to consider postappeal matters that the plaintiff has raised in this court regarding the defendant's purported judicial admission that the parties were mutually mis-

taken that the oral stipulation would provide the parties with their intended benefits.[17]

The judgment of the Appellate Court is affirmed insofar as that court reversed the trial court's finding of contempt, remanded with direction to deny the defendant's motion for contempt, and affirmed the trial court's rulings on postjudgment motions; the judgment of the Appellate Court is reversed with respect to the trial court's ruling on the defendant's motion for sanctions on the basis of litigation misconduct, the award of attorney's fees and expert fees is vacated, and the case is remanded to the Appellate Court with direction to remand the case to the trial court for further proceedings on the defendant's motion for sanctions in accordance with this opinion.

In this opinion the other justices concurred.

[1] Upon the termination of alimony payments, the defendant also was obligated to pay the mortgage encumbering the marital residence until the mortgage was paid in full.

[2] The plaintiff has characterized the court's ruling as resting on fraud because the defendant had claimed that his earnings were expected to decrease during the hearing on the motion to modify. The defendant disputes this characterization, contending that he was unaware of his obligation to disclose a pending offer of employment that had not been formally offered and that the trial court made no express finding of fraud, just a violation of the defendant's duty to disclose. The basis of the ruling was not stated on the record. Although the plaintiff cited this purported fraud as a basis of an unclean hands defense to the defendant's motion for contempt, the trial court did not address this defense in its order finding the plaintiff in contempt. In the absence of an articulation, which the plaintiff did not request, we interpret that omission as an implicit rejection of that defense.

[3] Roberts explained that the purpose of the special needs trust was to keep the plaintiff's income and assets below the threshold necessary to qualify for government disability benefits.

[4] The plaintiff contended that the defendant's ability to invade the trust as a residuary beneficiary and as a means of recovering disallowed deductions rendered the trust invalid because the law requires the plaintiff to be the sole beneficiary and the government provider of disability benefits to be named as a beneficiary. She further contended that the provision making the defendant a residuary beneficiary of the trust into which he was to deposit the alimony payments prevented him from claiming those payments as a deduction under tax law.

[5] The plaintiff argued that the application of the provision that permitted the defendant to recoup any tax deduction disallowed plus any penalties assessed could result in the plaintiff's receiving less than she had before the modification, or even nothing.

[6] The plaintiff's motion was, as the trial court recognized, more comprehensive than a typical motion, and it provided legal analysis and authority in support of its mistake of law and impossibility grounds. The defendant contested the propriety of treating the submission as a hybrid motion and memorandum of law, and pointed out that it did not provide legal analysis for all of the plaintiff's claims.

[7] The same day as the hearing, the plaintiff filed a motion to dismiss and/or to strike the defendant's motion for an order approving his draft stipulation, which was dated the day before the trial court presented them with the written stipulation. In the plaintiff's motion, she argued that the oral stipulation was not viable because of the failure of the condition precedent of obtaining a tax opinion that the alimony would be tax deductible under the terms of the stipulation. Two months later, the defendant filed an objection, challenging the motion on procedural, jurisdictional (mootness), and substantive grounds. The court thereafter denied the plaintiff's motion.

[8] Although not expressly stated, we interpret Greenberg's characterization of the payments as "gratuitous" to refer to the amount in excess of the defendant's obligation under the court's orders in place before the February, 2014 stipulation was ordered.

[9] Davis is the special needs trust lawyer who was designated as the plaintiff's expert in support of her motion to open and vacate.

[10] We concluded that an articulation was necessary not merely because the court's order failed to identify what acts provided the basis for the finding of contempt. It also was necessary because the court indicated that its decision rested on undesignated, "relevant portions" of the entire judicial file for the protracted litigation in the case and because the amount of the award and the court's comments at the hearing focusing on the plaintiff's litigation efforts raised the distinct possibility that the court had rested the award in part on litigation misconduct. Moreover, this is not a case that could be conclusively resolved if we were to determine that there was one proper basis for making an award because that determination could be insufficient to address the open question of whether the amount of the award is reasonable.

[11] We will discuss these facts as they become relevant to the discussion that follows.

[12] The defendant conceded at oral argument before this court that a legal opinion that the deductibility would be impacted if the alimony were assigned to the trust would meet this obligation.

[13] The thirteen page document, dated March 1, 2014, is stamped "Draft—For Discussion Purposes Only." It opines that payments by a former spouse to a third party (i.e., the special needs trust) could qualify as tax deductible alimony but that such payments would be disqualified if the payor (the defendant) is a residuary beneficiary of the trust. The draft cites various federal tax code provisions and related agency regulations/rulings, applicable case law, and a trust treatise in support of its opinion. It is unclear whether the document's stamp for "discussion purposes only" was related to a footnote appended to the section heading entitled "Conclusion" that stated: "The advice was not intended or written by the practitioner to be used, and that it cannot be used by any taxpay[er], for the purpose of avoiding penalties that may be imposed on the taxpay[er]." Comments from Kweskin during the hearing on the motion for sanctions and for contempt reflect that he had seen this opinion letter.

This opinion letter also was referenced in the plaintiff's earlier filed motion to open and vacate, which indicated that the opinion was "annexed" to that motion. We did not find a copy of the opinion appended to this motion and have no way of knowing whether it never was included or whether it was included but became separated from the motion after it was filed.

We agree that the opinion letter was never submitted into evidence. When Greenberg attempted to state the contents of the opinion letter at the November, 2014 hearing on the motion to open and vacate, the defendant objected. The court, *Heller, J.*, sustained the objection and noted that the plaintiff could introduce the letter later. She did not do so in that proceeding. When the location of the letter was raised at the subsequent contempt hearing, the trial court, *Tindill, J.*, effectively conveyed that the opinion was immaterial because, even if it assumed that the letter existed, "[t]he problem with the whole thing is that [the plaintiff] agreed to what was made a court order and then she decided [that] she didn't like the agreement." Nonetheless, it would have been the better practice for the plaintiff to formally submit this document into evidence.

[14] We observe that the trial court's reliance on the absence of the accountant's opinion from the record necessarily implies that it disagreed with the defendant that the "legal opinion" required was one from an attorney. The accountant's opinion would otherwise be immaterial. The record does not reflect the reason for the court's disagreement. It may be that the court concluded that the term "legal opinion" did not plainly and unambiguously mean one from an attorney and reasonably could mean an opinion on tax law from a professional qualified to provide that opinion for the purpose for which it was given. That determination would have permitted the court to consider Roberts' statement when the oral stipulation was put on the record, referring to the parties' intention to seek advice from "a special needs trust and a tax person." See *Afkari-Ahmadi* v. *Fotovat-Ahmadi*, supra, 294 Conn. 390 ("[b]ecause a stipulation is considered a contract, [o]ur interpretation of a separation agreement that is incorporated into a dissolution decree is guided by the general principles governing the construction of contracts" [internal quotation marks omitted]); see also *Parisi* v. *Parisi*, supra, 315 Conn. 382–83 (agreement incorporated into dissolution judgment is construed under contract principles, under which clear and unambiguous language renders parties' intent question of law, and extrinsic evidence is admissible to explain ambiguity in instrument). Alternatively, the court may

have relied on estoppel. At the hearing on the defendant's motion for order, when the plaintiff first brought the accountant's opinion to the court's attention, the defendant argued that the plaintiff had never provided him with that opinion, as she was required to under the stipulation. This statement clearly implied that an opinion from an accountant could meet that obligation. The plaintiff's assumption that this was the case is reflected in two court filings prior to the defendant's moving to hold her in contempt. See, e.g., *Shanahan* v. *Dept. of Environmental Protection*, 305 Conn. 681, 708, 47 A.3d 364 (2012) ("[t]here are two essential elements to an estoppel— the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done" [internal quotation marks omitted]). Whether an accountant's letter is sufficient demonstrates an ambiguity, making contempt inappropriate. In other words, it was a reasonable interpretation to believe that an accountant's letter was enough.

[15] The defendant did include in his allegations of fact that the trial court's memorandum of decision memorializing the oral stipulation "became necessary as a result of the plaintiff's refusal jointly to submit in writing the terms the parties had orally agreed to on February 19, 2014. However, the defendant never claimed that the plaintiff's conduct in this particular regard constituted contempt.

[16] Certain comments by the court at the hearing on the motion for sanctions imply that the court may have held this view, including the court's complaint that the plaintiff had accepted the $10,000 monthly alimony payments while disputing the validity of the agreement. The implication is not a necessary one, however, and we will not supply it by inference in the present context.

[17] The plaintiff filed a motion for a supervisory order that informed us that, after oral argument before this court, the defendant successfully moved to open and vacate the order on which the contempt rested on the ground of mutual mistake. She contends that the defendant's position in the motion was consistent with her position during litigation and that he should be judicially estopped from claiming otherwise. In his motion to vacate, the defendant admitted that the parties had mistakenly believed that the terms of the oral stipulation would allow the tax deduction and would provide the basis for a valid special needs trust, and contended that the parties could have rectified these concerns by adding and deleting certain terms, but the plaintiff would not agree to execute a trust that would afford him the benefits intended.

———————————————